IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

LEONARD JORDAN,

                Plaintiff,

v.

JEFFREY SMITH,

                Defendant.

OPINION and ORDER

23-cv-361-jdp

---

Plaintiff Leonard Jordan is a Wisconsin prisoner, and defendant Jeffrey Smith is a correctional officer who supervised Jordan at his prison job. Jordan contends that Smith violated his rights under the Eighth Amendment in two ways, first by forcing him to work in cold weather for multiple hours, and second by delaying Jordan's medical care. Jordan alleges that he continues to suffer from foot pain because of his extended exposure to the cold that day.

Smith moves for summary judgment on both claims, and the court will grant the motion in part and deny it in part. Jordan repeatedly told Smith that he was in pain and could not continue, even to the point that he began crying in front of Smith. So a reasonable jury could find that Smith knew that Jordan needed a break from the cold. But Jordan has not presented evidence that Smith knew that Jordan needed medical treatment while the crew was outside or that he delayed medical treatment when Jordan requested it. So the court will dismiss the medical-care claim, but allow the claim about cold exposure to proceed to trial.

UNDISPUTED FACTS

The following facts are undisputed unless otherwise noted.

Jordan was on the maintenance crew at Jackson Correctional Institution. Smith was a correctional officer who supervised the crew.

On the morning of December 19, 2022, prison officials issued a "winter weather advisory" and postponed any recreation outdoors. It was about 0 degrees Fahrenheit outside.[1]

Around 8:15 a.m., the maintenance crew was sent outside to shovel snow and collect garbage. Jordan was wearing the following clothing: a hat, a neck warmer, a tank top, a t-shirt, a "state-issued green shirt," a sweater, a coat, a pair of latex gloves, a pair of garden gloves, a pair of winter gloves, jogging pants, "thicker" socks, and boots.

For the next two to three hours, Jordan and several other prisoners collected garbage and shoveled snow while Smith supervised. After an unspecified amount of time, Jordan told Smith that his hands were hurting. Jordan's gloves were wet, so he could not wear them. Smith told Jordan they needed to get the job done.[2]

About 45 minutes later, Jordan and some of the other crew members told Smith they needed a warming break. Jordan said that his hands and feet were hurting, he was shaking, he

---

[1] The parties stipulated to this fact, Dkt. 29, ¶ 47, but in its reply materials, Smith says that the stipulation is based on La Crosse weather conditions, not Black River Falls, where the prison is located. Dkt. 33, at 4 n.2. A party may not raise new issues in a reply brief, so the court will use the stipulated fact for the purpose of Smith's summary judgment motion. But if Smith wishes to put in new evidence at trial regarding the weather conditions, he is free to do so.

[2] Smith attempts to dispute this and other proposed facts without citing evidence or raising an objection, so those facts are undisputed for the purpose of deciding Smith's summary judgment motion. *See* Motions for Summary Judgment II.C, *attached to* Dkt. 11.

could not shovel anymore, and he needed to warm up. In response, Smith said, "The longer we stand around, the longer we'll be out here." Dkt. 24 (Jordan Dep. 24:24:14–15, 53:15–17).

About 15 minutes after that, Jordan told Smith that his hands and feet were "start[ing] to hurt extremely bad, . . . like there was like pins and needles almost, and they were burning." *Id.* at 55:1–4. Jordan again said that he could not go on any longer, and he needed to go inside to warm up. At this point, Jordan was crying.

Smith says that he gave the crew "two to four" warming breaks while they were outside. Jordan says that Smith provided no warming breaks, and he denied each of Jordan's requests for such a break.

About 15 minutes after denying Jordan's last request, Smith let the crew go inside. Jordan was unable to walk, so he was taken by wheelchair to the health services unit a little after 11:30. The nurse observed that Jordan was in "terrible pain," he could not walk, he was shaking, his feet were cold, and he was still crying. Dkt. 31, ¶ 18; Dkt. 22 (Anderson Dep. 9:14–10:25). She initiated protocols for treating hypothermia and frostbite, but she did not diagnose those conditions because diagnosis is reserved for doctors.

Jordan still suffers from foot pain, he needs to wear special shoes, and he has difficulty standing for long periods of time.

ANALYSIS

The court allowed Jordan to proceed on two claims under the Eighth Amendment: (1) Smith exposed Jordan to extremely cold temperatures for an extended period without proper protection or warming breaks; and (2) Smith failed to provide prompt medical attention for Jordan when Jordan requested care. Smith moves for summary judgment on both claims.

3

The question on summary judgment is whether there are any genuine factual disputes that could make a difference to the outcome of the case, or, stated another way, whether a reasonable jury could find for the nonmoving party, after drawing all reasonable inferences in that party's favor. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Loudermilk v. Best Pallet Co., LLC,* 636 F.3d 312, 314–15 (7th Cir. 2011); *Montgomery v. American Airlines, Inc.*, 626 F.3d 382, 389 (7th Cir. 2010).

## A.  Cold exposure

The Eighth Amendment prohibits cruel and unusual punishment. In the prison context, the Supreme Court has interpreted this to mean that prison officials violate the Eighth Amendment when they are "deliberately indifferent" to a substantial risk of serious harm. *Farmer v. Brennan*, 511 U.S. 825 (1994). A plaintiff asserting an Eighth Amendment claim about his conditions of confinement must prove four things: (1) the defendant subjected him to a substantial risk of serious harm; (2) the defendant was aware of that risk; (3) the defendant consciously refused to take reasonable measures to prevent the plaintiff from being harmed; and (4) the plaintiff was harmed because of the defendant's action or inaction. *See* Seventh Circuit Jury Instructions § 7.15 (2017); *Pyles v. Fahim*, 771 F.3d 403, 409 (7th Cir. 2014).

Smith contends that Jordan cannot satisfy the first two elements of his claim. In the alternative, Smith contends that he is entitled to qualified immunity because the law is not clearly established that his conduct violated the Eighth Amendment.

### 1.  Substantial risk of serious harm

On the first element, Smith does not dispute that Jordan suffered a serious harm. Instead, Smith says that Jordan was not subjected to a "an objectively serious of risk of harm"

4

because Jordan was dressed in winter clothing, and shoveling snow is not an "inherently dangerous" activity. Dkt. 24, at 10–11.

Smith is conflating elements. The first element asks simply whether the prisoner was subjected to a substantial risk of serious harm. When, as in this case, the prisoner *was* harmed, the question of a "risk" of harm is moot. Rather, the question is simply whether the harm was sufficiently serious to implicate the Eighth Amendment. *See Knight v. Wiseman*, 590 F.3d 458, 466 (7th Cir. 2009) (first element not satisfied because there was no evidence that the defendant's conduct "aggravated [the prisoner's] injury to his right shoulder or caused him significant additional pain"). This is why courts consistently conclude that the first element is satisfied in any case involving a suicide or a serious assault, regardless of how obvious the risk was. *See, e.g.*, *Quinn v. Wexford Health Sources, Inc.*, 8 F.4th 557, 565 (7th Cir. 2021); *Gevas v. McLaughlin*, 798 F.3d 475, 480 (7th Cir. 2015); *Collins v. Seeman*, 462 F.3d 757, 760 (7th Cir 2006); *Brown v. Budz*, 398 F.3d 904, 910 (7th Cir. 2005).

Smith's argument is really that he cannot be held liable because the objective evidence available to him did not suggest that Jordan or any other prisoner was in danger. But Smith cites no cases supporting a view that that a prisoner fails on the first element because the risk was not sufficiently obvious. Rather, that is an argument about the *second* element, which is whether the defendant was aware of a substantial risk of serious harm. *See Farmer v. Brennan*, 511 U.S. 825, 842 (1994) ("[A] factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious."). The court will turn to that question next.

5

2. Awareness of risk

On the second element, both parties rely on case law that bears some similarity to Jordan's claim but is not directly on point. Smith cites *Knight*, 590 F.3d 458. The plaintiff was a prisoner on the maintenance crew; the defendants were correctional officers who supervised the crew. The plaintiff had a preexisting shoulder injury, but the defendants did not know that. During one day of road maintenance, the plaintiff injured his shoulder after the defendants "demanded that he do more" work, but the defendants did not witness the injury. When the plaintiff told them that he "felt his shoulder rip," they told him to "do whatever work he could with one arm." When he complained again a few minutes later, they allowed him to stop working. The court concluded that the defendants could not be held liable under the Eighth Amendment because they were not aware of his preexisting injury when they required him to work, and they allowed him to stop working once they realized he was in serious pain. 590 F.3d at 461–66.

Jordan cites *Smith v. Peters*, 631 F.3d 418 (7th Cir. 2011). The plaintiff was a prisoner assigned to uproot tree stumps in the "'freezing cold' with axes, pickaxes, and shovels and without having received any safety instruction or protective gear—not even gloves." He developed blisters from using the tools without gloves. The court concluded that the plaintiff stated a claim because "[f]ailure to provide a prisoner required to work out of doors with minimal protective clothing, obviously including gloves, can . . . violate the Eighth Amendment." *Id.* at 419–20.

*Smith* is not directly on point because Jordan *did* have winter gear. And *Knight* is not directly on point because Smith required Jordan to keep working when Jordan repeatedly

6

complained, unlike the defendant in *Knight*. Neither case is dispositive, so the court will conduct its own analysis.

Some facts support Smith's position that the risk to Jordan was not obvious: Jordan was in winter gear, no one else was complaining they were in pain, and Smith was not aware of a medical condition that would make Jordan more susceptible to the cold. But other facts support Jordan: it was unusually cold, Jordan was outside for multiple hours, Jordan was not the only prisoner asking for a warming break, Jordan complained to Smith three times, Jordan told Smith that his hands and feet hurt, he needed a warming break, and he could not shovel anymore. The second time he was shaking. The third time he was crying. Jordan also says that he had to take his gloves off because they were wet. He does not say whether Smith saw this, but it is reasonable to infer that he did.

From these facts, a reasonable jury could infer that Smith knew that Jordan was at risk of serious harm. Jordan told Smith multiple times that he could not stay outside anymore because he was in pain, and he became visibly distraught. Regardless of whether other prisoners were making identical complaints, a reasonable jury could find that Smith could not simply ignore Jordan's pleas but had to do *something* to help Jordan. Smith says that he did allow warming breaks, but Jordan denies that, and the court must accept the nonmoving party's version of the facts. *Gupta v. Melloh*, 19 F.4th 990, 996–97 (7th Cir. 2021).

Smith raises two objections, but neither is persuasive. He cites Jordan's deposition testimony that Jordan overheard Smith telling another officer, "I think he just didn't want to work. I don't think there's anything wrong with him." Dkt. 19, at 72:10–14. Smith cites *Horshaw v. Casper*, 910 F.3d 1027 (7th Cir. 2018), and *Olson v. Morgan*, 750 F.3d 708, 713

7

(7th Cir. 2014), for the proposition that "prison guards are neither required nor expected to believe everything inmates tell them."

*Horshaw* and *Olson* do not support dismissal of Jordan's claim. In *Horshaw*, the court concluded that a prisoner's letter was enough to place an officer on notice of risks described in the letter, so summary judgment in favor of the defendant was reversed. 910 F.3d at 1030. In *Olson*, the officer did not simply ignore the prisoner's complaints, as Jordan alleges in this case. Rather, the officer investigated the threat alleged by the prisoner and determined that it was unfounded. 750 F.3d at 713.

It is true that a defendant cannot be held liable under the Eighth Amendment if he honestly believed that the prisoner was lying about a risk of harm. *See Farmer*, 511 U.S. at 837 ("[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."). But that does not mean that a defendant is entitled to summary judgment in any case in which notice of the risk comes from the prisoner himself or any case in which the officer expressed disbelief about what the prisoner was saying. If that were true, an officer could ignore a prisoner who said he was having a heart attack. Rather, "a prisoner normally proves actual knowledge of impending harm by showing that he complained to prison officials about a specific threat to his safety." *Gevas*, 798 F.3d at 480 (internal quotation marks and alterations omitted). It then generally becomes a question for the jury to determine whether the officer believed the prisoner. *Id.* at 482.

In this case, Smith does not identify any reason why he would have believed that Jordan was lying to get out of work. In fact, Smith testified that Jordan was quiet, but "he did his job." Dkt. 18, at 23:7–14. The other maintenance supervisor similarly stated that Smith "was a good

8

worker" who "always did what . . . was . . . asked of him." Dkt. 20 (Drangstveit Dep. 10:1–3). Smith identifies no previous situations in which Jordan tried to shirk his work. Smith is free to testify at trial that he thought that Jordan was lying, but a jury would not be required to credit that testimony.

Smith also says that Jordan could have worn additional gear, such as a snowsuit or rubbers for his boots, if he wanted. Jordan says that he did not know that such gear was available. Regardless, the question under the Eighth Amendment is whether the *defendant* consciously failed to take reasonable measures to help the prisoner. Contributory negligence is not a defense. *McGill v. Duckworth*, 944 F.2d 344, 352–53 (7th Cir. 1991); *Santiago v. Lane*, 894 F.2d 218, 224 (7th Cir. 1990). If Smith believed that putting on additional gear would address Jordan's concerns, he could have allowed Jordan to retrieve such gear, but he did not do that.

### 3. Qualified immunity

Smith's last argument on this claim is that he did not violate clearly established law, so he is entitled to qualified immunity. But the legal standards relevant to this case are well established. As in many cases brought under the Eighth Amendment, "[t]he uncertainty in this case is factual," not legal. *Horshaw*, 910 F.3d at, 1030. Specifically, the question is whether Smith knew that he was subjecting Jordan to a substantial risk of serious harm by keeping him outside. When, as in this case, the plaintiff's claim turns on the defendant's state of mind, qualified immunity is not appropriate. *Brown v. LaVoie*, 90 F.4th 1206, 1214 (7th Cir. 2024). Smith cites no cases in which the court of appeals applied qualified immunity under similar circumstances.

A reasonable jury could find that Smith was aware that Jordan was being subjected to a substantial risk of serious harm, and it is clearly established that a correctional officer may not disregard such a risk. So the court will deny Smith's motion for summary judgment on this claim.

## B. Delay of medical care

An Eighth Amendment claim for failure to provide medical care is similar to a claim about conditions of confinement. The plaintiff must prove that the defendant knew that the plaintiff needed medical attention, but the defendant refused to provide it. *Berry v. Peterman*, 604 F.3d 435, 441 (7th Cir. 2010).

The court allowed Jordan to proceed on a medical-care claim because it was reasonable to infer from the complaint that Jordan asked Smith to go to the health services unit after the crew came back inside and that Smith made Jordan wait for about a half hour to "see if Jordan improved." Dkt. 9, at 2. But it is now undisputed that a different officer—Jordan believes his name was Arnold—told Jordan to wait, and that Smith allowed Jordan to go for treatment when Jordan complained to Smith directly. Dkt. 19 (Jordan Dep. 71:6–75:13). Jordan identifies no other basis for inferring that Smith knew that Jordan needed medical care (as opposed to shelter from the cold) but nevertheless delayed that care. So the court will grant summary judgment to Smith on this claim.

## ORDER

IT IS ORDERED that defendant Jeffrey Smith's motion for summary judgment, Dkt. 23, is GRANTED in part and DENIED in part. The motion is DENIED as to Leonard Jordan's claim that Smith exposed Jordan to the cold, in violation of the Eighth Amendment.

The motion is GRANTED as to Jordan's claim that Smith delayed Jordan's medical care, and that claim is DISMISSED with prejudice.

Entered January 23, 2025.

BY THE COURT:

/s/

_____
JAMES D. PETERSON
District Judge