IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

LEONARD JORDAN,

                          Plaintiff,                          OPINION and ORDER

      v.

JEFFREY SMITH,                                                23-cv-61-jdp

                          Defendant.

---

Plaintiff Leonard Jordan is suing defendant Jeffrey Smith under the Eighth Amendment for prolonged exposure to cold temperatures in December 2022 while working outside. Trial is scheduled for May 5. This order addresses the motions in limine, ruling on most of them and identifying issues that require further discussion during the final pretrial conference.

ANALYSIS

**A. Jordan's motions in limine**

**1. Evidence of criminal history**

The parties agree that Jordan has been convicted of two felonies that qualify for admission under Federal Rule of Evidence 609. Jordan moves to limit evidence of his prior convictions to testimony that he has been convicted of two felonies, without any other details. The court will grant this motion. Jordan's request is consistent with this court's practice of excluding the details of a prisoner's prior convictions in civil rights cases:

> The point of Rule 609 is to allow, but limit, attacks on a witness's character for truthfulness. In a prisoner civil rights case, the jury will know that the plaintiff is serving a criminal sentence. The nature of the crime of conviction, or the sentence received, doesn't say anything more about a witness's character for truthfulness— unless it is a crime of dishonesty, which is separately addressed in

> Rule 609(a)(2). But adding the details of a non-dishonesty conviction, including the name of the crime and the sentence received, impugns the general character of the witness, making him seem dangerous, unlawful, or unsavory in the eyes of the jury.

*Wynn v. Adams*, No. 23-cv-364-jdp, 2024 WL 4589485, at *1–2 (W.D. Wis. Oct. 28, 2024). Smith does not identify any reason for providing additional details, so the court will allow defense counsel to ask Jordan whether he has been convicted of felonies and how many times. No other details are allowed.

Jordan asks that the same rule be applied to "any other witness's criminal convictions," but he does not identify other witnesses or convictions. In his response brief, Smith says that he wants to put in evidence of prior convictions for three other witnesses: Dayna Mason, David Tattum, and Stephen Alexander. The same rule will apply to those witnesses as well. If Jordan believes that evidence about those witnesses should be further limited or excluded, he may raise that issue during the final pretrial conference.

### 2. References to taxes

Jordan moves to preclude Smith from referring to the jury as taxpayers or implying that an award would be funded by taxpayer dollars. The court will grant this motion as unopposed.

### 3. Clothing and restraints during trial

Jordan moves for permission to wear street clothes during the trial and to appear with non-visible restraints, such as a stun belt. The court will grant this motion as unopposed. It is Jordan's responsibility to make the necessary arrangements for clothing. Counsel must bring the clothing to the courthouse for inspection by the U.S. Marshals at least one business day before the trial. If either party has remaining concerns about the use of restraints during the trial, those should be raised during the final pretrial conference.

### 4. Judicial notice of the weather

Jordan asks the court to take judicial notice that the temperature in Black River Falls on the morning of December 19, 2022, was one degree Fahrenheit with winds of seven miles per hour. The court will grant this motion as unopposed. The parties may discuss during the final pretrial conference how they wish to present this information to the jury, such as through a stipulation or a jury instruction.

### 5. Evidence about DOC's cold weather policy

The parties agree that DOC has a policy regarding outside work in cold weather. Dft.'s Ex. 507. Jordan seeks two rulings about evidence related to that policy. First, he says that details of the policy should be excluded because they aren't relevant. Second, Jordan says that he should be allowed to "impeach[]" Smith by putting in evidence that "contradict[s]" Smith's testimony about the policy. Dkt. 48, at 5.

Smith opposes the motion. He says that he should be allowed to introduce the policy itself and to testify that he complied with the policy because such testimony "is relevant to Smith's subjective knowledge as to whether Jordan was subjected to a substantial risk of serious harm." Dkt. 61, at 3.

The parties agree that Jordan's claim under the Eighth Amendment does not turn on whether Smith complied with DOC policy. In the Fourth Amendment context, the court of appeals has gone even further, holding that "the violation of police regulations or even a state law is completely immaterial as to the question of whether a violation of the federal constitution has been established." *Thompson v. City of Chicago*, 472 F.3d 444, 454 (7th Cir. 2006). In the Eighth Amendment context, the rule is more nuanced because policies may be relevant to show intent. For example, in *Mays v. Springborn*, the court stated that a "violation

of the prison's rule against public searches was not, by itself, a violation of the constitution," but "it was relevant evidence on which the jury could have relied to conclude that the searches were done with an intent to harass." 575 F.3d 643, 650 (7th Cir. 2009). Similarly, in *Woodward v. Correctional Medical Services of Illinois, Inc.*, the court concluded that violations of internal policies can be "relevant circumstantial evidence to show [the defendant's] knowledge and state of mind." 368 F.3d 917, 930 (7th Cir. 2004).

These cases suggest that the relevance of evidence about the cold-weather policy is contingent on what Smith knew about it. If Smith did know about the policy, then evidence that he either complied with it or violated it could be evidence that he acted in good faith or that he disregarded a risk of harm. But if he did not know about the policy, it is irrelevant.

Smith's deposition testimony is equivocal about what he knew. Jordan cites the following passage from cross-examination by Jordan's counsel:

> Q.: And then is it accurate too—like we've talked about this that— you know, I think you would agree, that you weren't totally familiar with the policy in terms of temperature thresholds and amount of times for warming breaks, correct?
>
> A.: I was unaware of that at the time, yes.

Dkt. 18, at 51:15–21. The question and answer are both ambiguous because the question asks whether Smith was "totally familiar" with certain parts of the policy without explaining what that means, and Smith responds that he was unaware of "that," without specifying what "that" is.

For his part, Smith cites the testimony of Robert Mann, who was the buildings and grounds superintendent at the prison. Dkt. 21. Specifically, Mann testified about an email that he wrote to an inmate complaint examiner in response to a grievance Jordan filed. Mann wrote in his email that Smith "was aware of the policy," but he "did not know the exact working time

4

limits." *Id.* at 23:10–13. Mann's testimony is not helpful because he does not identify the foundation for his testimony. If it is based on a conversation with Smith, then any testimony from Mann is hearsay.

So at this point, the relevance of evidence about the cold-weather policy is unclear, and a final ruling on the policy's admissibility will have to wait until Smith testifies at trial. If Smith relied on his understanding of the policy, he is free to testify about that. But the court's tentative ruling based on Smith's deposition testimony is that the policy itself is not admissible because Smith did not know the details of the policy. Under those circumstances, admitting the policy (which is 11 pages long) would only confuse the issues and give undue weight to a document that did not play a role in Smith's decision making. Smith identifies no relevant purpose for admitting the policy itself.[1]

The remaining question is whether Jordan should be permitted to impeach Smith with testimony about the policy. Jordan's argument on this issue is difficult to follow. He appears to be contending that there is a "contradiction" in the evidence, and he wants to "impeach" Smith with that contradiction, but he does not clearly identify what the contradiction is. Dkt. 48, at 4–5.

Jordan cites three passages from depositions to support his argument. First, he cites testimony from Mann, who read from an email he wrote to the grievance examiner: "Drangstveit [Smith's coworker] also reminded CO Smith that he had the keys to all the back doors and needs to let the crews warm up more often in colder weather conditions per policy." Dkt. 21, at 23:16–20. Second, he cites Smith's testimony that he "know[s] that we have keys

---

[1] If any testimony by Smith is inconsistent with the policy, Jordan would be entitled to point out the inconsistency on cross-examination.

that go[] into the back door of each housing unit." Dkt. 18, at 50:9–11. Third, he cites Smith's testimony that someone "walked [him] through the cold weather policy" after the December 2022 incident. *Id.* at 56:4–5.

Jordan's position appears to be that there is inconsistent evidence about Smith's knowledge of the policy, and Jordan is entitled to introduce that evidence because "it raises the inference that Smith's account of December 19, 2022, is either untruthful or his memory of the day is unreliable and should not be credited by the jury." Dkt. 48, at 5. But Mann's email about a conversation between Drangstveit and Smith is unhelpful because it lacks foundation and appears to be based on hearsay. Regardless, Jordan has not identified any contradictory statements. Rather, all the testimony cited by Jordan suggests that Smith had a hazy memory of the policy. The court will deny this part of Jordan's motion. He may not use the cited testimony for the purpose of showing inconsistencies in the deposition testimony. Jordan is free to impeach Smith during trial if Smith's trial testimony contradicts his deposition testimony.

### 6. Jordan's work habits

Jordan wants to put in evidence that he was "a good worker, quiet, and never complained while on the maintenance crew." Dkt. 48, at 5. Jordan contends that such evidence is admissible under Federal Rule of Evidence 404(b) because it is relevant to show that Jordan "lacked a motive to fabricate an injury to get out of work." Dkt. 48, at 5.

Evidence about Jordan's motive to lie is not admissible under Rule 404(b) because it is not directly relevant to any of the elements that Jordan is required to prove. Jordan does not have to prove his own mental state. But Jordan does have to prove that Smith was aware that Jordan's health was at risk. Whether Smith believed Jordan's complaints is directly relevant to

that element, and Jordan's past work habits are circumstantial evidence of whether Smith believed Jordan. As the court observed in the summary judgment decision, if Jordan had a history of being good worker, this suggests that Smith would have less reason to believe that Jordan was complaining about cold weather simply to get out of working. Dkt. 34, at 8–9.

So the court will grant this motion. Jordan may testify about his work habits while working for Smith, and Smith and Drangstveit may offer their opinions of his work habits. The only qualification of this ruling is that any testimony must be limited to work habits that Smith knew about as of December 19, 2022. For example, a witness may not testify about Jordan's work habits on previous jobs unless it is accompanied by evidence that Smith was aware of those habits. And no witness may testify about work habits after December 19, 2022.

### 7. Injuries to other prisoners

Jordan moves to exclude evidence about whether other prisoners working with Jordan suffered injuries. The court will grant this motion in part. Evidence about injuries to other prisoners is relevant only to the extent that Smith knew about that evidence at the time that Jordan was asking Smith to go inside. So Smith may testify about what other prisoners were telling him and about his own observations of those prisoners at the time. Prisoners may also testify about what they told Smith or about their own behavior, so long as there is evidence that Smith could have observed that behavior. But no witness may testify about injuries (or the lack thereof) that Smith was not aware of until after the prisoners went back inside.

### 8. Availability of warmer clothes

Jordan moves to exclude two types of evidence about the availability of warmer clothes: 1) testimony that it is the inmate's responsibility to dress warm enough; and 2) testimony that Jordan could have obtained warmer clothes prior to his shift.

The court will grant this motion. As the court noted in the summary judgment opinion, contributory negligence is not a defense to an Eighth Amendment claim. *McGill v. Duckworth*, 944 F.2d 344, 352–53 (7th Cir. 1991); *Santiago v. Lane*, 894 F.2d 218, 224 (7th Cir. 1990). Jordan is not suing Smith for refusing to allow Smith to put on more layers before going outside, so any evidence that Jordan "should have" or "could have" worn warmer clothes is irrelevant.

If Smith had given Jordan the opportunity to retrieve warmer clothes after Jordan complained about being cold, but Jordan declined, that could be relevant to showing both Smith's intent (because it would be evidence that Jordan was not as cold as he said he was) and the reasonableness of Smith's conduct (because it would be evidence that Smith offered to help Jordan). But Smith does not contend that he gave Jordan an opportunity to go back to get warmer clothes after they were already outside.

Jordan's failure to anticipate earlier that he needed warmer clothes would be relevant only to show contributory negligence, so that evidence is excluded. Both sides are free to point out in their opening statements or closing arguments that Jordan's claim is limited to how Smith responded to Jordan's complaints while they were outside, and Smith is not being accused of sending Jordan out into the cold without proper winter gear or of refusing a request for more gear before they started work.

### 9. Grievance materials

Jordan moves to admit the materials generated from the grievance he filed about December 19, 2022, including the grievance itself, his appeal, and the responses from prison officials. He says that they are relevant for two reasons: (1) "they memorialized the weather conditions on December 19, 2022"; and (2) they are evidence that Drangstveit said that he advised Smith about the cold-weather policy.

Jordan has not identified a lawful basis for admitting the grievance materials for either purpose. As an initial matter, he does not identify *any* purpose for introducing his grievance and appeal. The statements that Jordan wishes to rely on are in the responses to Jordan's grievance, not the grievance itself.

As for the responses to the grievance, it is not clear why Jordan wants to use those to prove the weather conditions. As previously noted, Smith does not oppose Jordan's motion to take judicial notice of those conditions. In any event, the statements Jordan wants to introduce from the grievance responses are hearsay. Jordan says that the grievance materials qualify for the business records exception, Federal Rule of Evidence 803(6), but even if that is true, it does not help Jordan because there are multiple levels of hearsay in the documents. Jordan does not contend that the grievance examiner had personal knowledge of the weather conditions or of any statements made by Drangstveit to Smith. Rather, she was simply reporting what she learned from other sources. Even for a business record, the offering party must identify a hearsay exception for each level of hearsay in the document, *see United States v. Borrasi*, 639 F.3d 774, 778–80 (7th Cir. 2011), and Jordan has not done that.

The court will deny this motion.

**10. Medical visits unrelated to Jordan's feet**

Jordan wishes to exclude evidence of medical visits that were for treating issues other than his feet. Specifically, he wants to preclude Smith from pointing out that Jordan did not complain about his feet during those other appointments. If this is allowed, Jordan says, that opens the door "to the dozens of appointments Jordan had for his feet to demonstrate that he did experience lasting pain and other symptoms related to his feet." Dkt. 48, at 9. The court understands Jordan to be representing that he will *not* try to introduce the medical records

showing his foot complaints unless Smith is allowed to introduce evidence of medical records relating to other issues.

Smith does not meaningfully respond to this motion. Most of the response is about whether Jordan may put in evidence about back issues. But Jordan's motion is to prohibit Smith from "questioning Jordan about medical visits unrelated to his feet." Dkt. 48, at 8. Jordan does not say that he is seeking damages for back problems.

Smith includes two sentences about the issue actually raised in Jordan's motion: "Defendant should be allowed to question Plaintiff as to any medical record as to his subjective understanding of his pain and experience. Any discussion as to fact witnesses about medical records must be open as to all the medical records in which Plaintiff describes his own experiences." Dkt. 61, at 7. Smith neither explains nor supports these assertions.

The court will not issue a blanket ruling about which medical records are admissible and which are not because Jordan has not identified any specific records he is seeking to exclude. The court agrees with the basic point that Jordan is making, which is that there is little probative value in offering evidence that Jordan didn't complain about foot pain during medical visits that were not about his foot pain. But there may be room for debate about which medical visits were "about" foot pain. Both parties should confer on that issue and be prepared to discuss it during the final pretrial conference, identifying any disputed medical records related to that issue.

11. The current condition of Jordan's feet

Jordan seeks permission to show the jury his feet or photographs of his feet. He says that he will testify that his feet looked "normal" before December 19, 2022, and his feet became "disfigured immediately following December 18, 2022." Dkt. 48, at 9. Jordan did not submit

a proposed photo as an exhibit, and he does not explain how his feet are "disfigured." But one of his medical records states that he has hyperkeratotic lesions on his skin and hammertoes. Plt.'s Ex. 41.

Smith objects on the ground that Jordan is not qualified to testify about what caused any disfigurement to his feet. But as Jordan points out, "[n]o expert testimony is required to assist jurors in determining the cause of injuries that are within their common experiences or observations." *Hendrickson v. Cooper*, 589 F.3d 887, 891–92 (7th Cir. 2009). In this case, Jordan says that he will testify that his feet became disfigured immediately after the events of December 19, 2022. This is consistent with the symptoms that Jordan described at the time, including an inability to walk. Smith points to no other potential causes of the disfigurement, either before or after December 19. Under these circumstances, a reasonable jury could infer that the cold exposure caused the disfigurement, even without expert testimony.

Smith also says that Jordan "has no evidence to support his contention that his feet looked 'normal' prior to December 19, 2022." Dkt. 61, at 7. That's incorrect; Jordan has his own testimony. That may be weak evidence, but Jordan has personal knowledge of how his own feet looked in the past, so it is admissible evidence. Smith is free to point that Jordan does not have *corroborating* evidence of what his feet looked like before. (Assuming that's true; neither side discusses whether Jordan has medical records related to his feet from before the cold exposure.) The court will grant this motion.

The remaining question is how Jordan will show the jury the present condition of his feet. He identifies no feasible way he could do that in the courtroom: the jury will not be able to see his feet from the witness stand. It makes more sense to show the jury contemporaneous photographs. But it does not appear that Jordan included any photographs on his exhibit list.

11

If he can, he should submit photographs to the court before the final pretrial conference. If that is not a practical option, Jordan should be prepared during the final pretrial conference to provide a date when he can provide such photographs to the court and Smith.

### 12. Alcohol and drug use

Jordan moves to exclude evidence of his uses of drugs and alcohol. The court will grant this motion as unopposed.

### 13. Undisclosed witnesses

Jordan moves to exclude any of Smith witnesses who were not timely disclosed. Jordan does not identify any specific witnesses. In response, Smith says that he should be allowed to call "newly identified witnesses intended to rebut Plaintiff's lost wages claims." Dkt. 61, at 8. Smith does not explain why he waited until now to disclose these witnesses, so he has not shown that the late disclosure is justified. He also does not contend that the late disclosure is harmless, so the court will grant the motion. In any event, the issue appears to be moot because Jordan says that he is not seeking lost wages.

### 14. Habeas corpus ad testificandum

Jordan seeks writs of habeas corpus ad testificandum for two incarcerated witnesses: David Tattum and Stephen Alexander (The court has already directed the clerk of court to issue a writ for Jordan. Another witness, Dayna Mason, was a prisoner in December 2022 but has since been released.) Jordan asks that the witnesses be brought to testify in person rather than through video conference. He says that the key issues in dispute depend on credibility: how Jordan appeared on December 19, whether Smith provided warming breaks, what Jordan and Smith said to each other. The two incarcerated witnesses were working with Jordan on December 19, so they both have personal knowledge of what happened that day.

12

The court will grant this motion as unopposed. During the final pretrial conference, Jordan's counsel should be prepared to identify which day Jordan expects to call these witnesses, so that the writ can be issued for the appropriate day.

## B. Smith's motions in limine

### 1. Evidence of medical conditions

Smith moves to exclude any evidence that Jordan was suffering from frostbite, hypothermia, or any other medical condition. Smith also moves to exclude "any medical record that includes a medical diagnosis of frostbite or hypothermia." Dkt. 49, at 2.

Jordan agrees that he may not offer his own medical diagnosis. But he says that he should be allowed to do the following four things: (1) testify about his pain and suffering during and immediately after he was exposed to the cold; (2) testify and offer medical records about his pain and suffering to the present; (3) elicit testimony that a prison nurse treated him using the protocols for treating hypothermia and frostbite; and (4) introduce medical records showing that "prison health officials who treated Jordan after December 19, 2022, diagnosed him with frostbite and hypothermia." Dkt. 57, at 4.

The court does not understand Smith to be objecting to the first category of evidence. Smith acknowledges that Jordan can testify about how he was feeling during and after his cold exposure. This is consistent with what the court has held in the past:

> [A lay witness] can testify about the pain and emotional distress he experienced because of the [defendant's conduct], so long as that testimony is rationally based on his own perceptions. Fed. R. Evid. 701. But [that witness] may not diagnose himself with a medical condition or offer an opinion that he suffers from a condition or needed specific treatment because of defendants' conduct.

*Raddant v. Larson*, No. 22-cv-555-jdp, 2024 WL 4707100, at *4 (W.D. Wis. Nov. 7, 2024). So the court will allow Jordan to testify about symptoms he experienced and why he believes those symptoms were the result of his cold exposure.

Smith's motion does not address the second category of evidence—evidence about Smith's ongoing pain and suffering to the present—so the court will not issue a final ruling. But as Jordan points out, the court has allowed lay witnesses to give similar testimony in other cases. *See Wynn*, 2024 WL 4589485, at *5. In the absence of a persuasive argument from Smith that such testimony is not admissible, the court will allow it.

Smith also does not directly address the third category of evidence, testimony that Tara Anderson (a prison nurse) treated Jordan using the protocols for treating hypothermia and frostbite. But the court is inclined to allow that evidence because the parties agree that is what Anderson did. Dkt. 34, at 3. Smith is free to clarify on cross-examination that Anderson did not diagnose those conditions. If Smith believes Anderson's testimony on this issue is inadmissible, it should raise that issue during the final pretrial conference.

As for the fourth category of evidence—medical records that include a diagnosis for frostbite or hypothermia—neither party has identified any such medical records, so the court cannot rule on this issue. If either party wishes to admit or exclude specific records related to this issue, they should identify those records during the final pretrial conference.

### 2. Future harm

Smith moves to preclude Jordan from introducing evidence about future harm. The court will grant this motion as unopposed.

### 3. Economic damages

Smith moves to exclude any evidence of lost earning capacity. Jordan does not oppose this motion, so the court will grant the motion as unopposed.

But there is a substantial caveat. Specifically, Jordan says that he should be permitted to offer evidence that: (1) Jordan was supposed to be transferred to a minimum-security prison in June 2024, but he was placed on a "medical hold" because of the injuries from the cold exposure, and that hold delayed his transfer until September 2024; (2) if he had received the transfer, he would have applied for work release and had the opportunity to start earning income; and (3) his injuries from the cold exposure have prevented him from taking part in programming, including "gardening, greenhouse, and community service programs." Dkt. 57, at 6. He contends that all of this evidence is admissible to support damages for emotional distress.

Jordan should have raised this issue in his own motion in limine rather than in response to Smith's motion about economic damages. Regardless, the evidence that Jordan cites does not support his claim for emotional distress. Jordan cites a June 2024 letter to him from "Tammy Maassen HSM," who appears to be the health services manager at Jackson Correctional Institution, where Jordan was housed at the time. Dkt. 56-5. Maassen states that Jordan's transfer to "SCCC" will be delayed because of "off-site orders for referrals due to complaints of back pain and other issues." *Id.* The court will assume that Maassen has personal knowledge of the contents of the letter and that SCCC is St. Croix Correctional Center, a minimum-security institution. But that assumption does not help Jordan. As previously discussed, Jordan is not alleging that his cold exposure caused his back pain, and the letter says nothing about Jordan's foot. So Maassen's letter does not show that injuries from the cold

15

exposure caused the delay. Jordan also cites an email from someone named Renee Millwood, who wrote in June 2024 that Jordan "is currently on a medical hold . . . pending resolution of medical appointments." Dkt. 56-4. The document provides no details about the nature of the medical appointments. So even if the court assumes that a medical hold associated with foot pain could be attributed to the cold exposure, the evidence Jordan cites does not support such a causal connection.

As for Jordan's statement that he would have applied for work release if his transfer had not been delayed, he cites no evidence that he would have received work release. For example, he does not say that he received or even applied for work release since his transfer to a minimum-security institution in September 2024.

As for Jordan's statement that injuries from the cold exposure have prevented him from participating in programming, he provides no foundation for that statement.

At this point, the court will not allow Jordan to put in evidence that the cold exposure in December 2022 delayed his transfer or prevented him from working or participating in programming. If Jordan believes he has additional evidence supporting these categories of damages, he may identify that evidence during the final pretrial conference.

### 4. Medical expenses paid by the state

Smith moves to exclude evidence about medical expenses paid by the state. The court will grant this motion as unopposed.

### 5. Other allegations against Smith

Smith moves to exclude evidence about allegations against Smith unrelated to this case. The court will grant this motion as unopposed.

### 6. Other lawsuits against DOC employees

Smith moves to exclude evidence about other lawsuits against DOC employees. The court will grant this motion as unopposed.

### 7. Summary judgment decision

Smith moves to exclude any reference to the court's summary judgment decision and any dismissed claims. The court will grant this motion as unopposed.

## C. Exhibits

One other issue requires attention. The court discovered in its initial review of the parties' exhibit lists that Smith submitted as one exhibit all of Jordan's medical records from January 2022 to February 2025. Dft.'s Ex. 510. The exhibit is nearly 1,200 pages.

Submitting a large collection of documents as one mass exhibit is unfair to the opposing side and can cause confusion during trial. It is unfair because it does not provide notice of which documents the party intends to offer into evidence. There is no scenario in which all of Jordan's medical records will be submitted to the jury. This creates confusion at trial because the document that is submitted to the jury is not in the same form as it was presented on the exhibit list, requiring last minute renumbering of the exhibit and creating an opportunity for mistakes.

For these reasons, the court asks the parties to number their exhibits on their exhibit list in the same form that they intend to offer them at trial. The court will give Smith an opportunity to resubmit Jordan's medical records with this in mind and for both parties to review their exhibits and resubmit any that are not in the form in which the party intends to offer them at trial.

ORDER

IT IS ORDERED that:

1.  The court rules on plaintiff Leonard Jordan's motions in limine, Dkt. 48, as follows:

    a.  Jordan's motion to limit evidence about prior convictions is GRANTED. Smith may ask witnesses whether they have been convicted of felonies, and, if so, how many times.

    b.  Jordan's motion to preclude Smith from stating or implying that any judgment will be paid by taxpayers is GRANTED.

    c.  Jordan's motion to wear street clothes and non-visible restraints during trial is GRANTED.

    d.  Jordan's motion to take judicial notice of the weather on December 19, 2022, is GRANTED.

    e.  Jordan's motion about the DOC cold-weather policy is GRANTED in part and DENIED in part. Smith may testify about the extent to which he relied on the policy, and Jordan may use the policy to impeach him if there are inconsistencies. The court's tentative ruling is that the policy itself is inadmissible. Jordan may not use the cited portions of deposition testimony to show alleged inconsistencies in that testimony.

    f.  Jordan's motion to allow evidence of his work habits is GRANTED.

    g.  Jordan's motion to exclude evidence about the availability of warmer clothes is GRANTED.

    h.  Jordan's motion to admit his grievance records is DENIED.

    i.  Jordan's motion to exclude evidence about medical records unrelated to Jordan's foot is GRANTED. The parties should be prepared to discuss during the final pretrial conference whether there are any disputes about which medical records are admissible.

    j.  Jordan's motion to display his feet to the jury is GRANTED with the qualification that he must present evidence in the form of photographs.

    k.  Jordan's motion to exclude evidence about his drug and alcohol use is GRANTED.

    l.  Jordan's motion to exclude witnesses who were not timely disclosed is GRANTED.

18

2. The court rules on defendant Jeffrey Smith's motions in limine, Dkt. 49, as follows:

    a. Smith's motion to exclude testimony from Jordan regarding a medical diagnosis is GRANTED. The court will reserve a ruling regarding medical records that include a diagnosis because neither side has identified any such records.

    b. Smith's motion to exclude evidence of future harm is GRANTED.

    c. Smith's motion to exclude evidence of economic damages is GRANTED.

    d. Smith's motion to exclude evidence of medical expenses paid by the state is GRANTED.

    e. Smith's motion to exclude evidence of allegations made against Smith unrelated to this case is GRANTED.

    f. Smith's motion to exclude evidence of other lawsuits involving DOC employees is GRANTED.

    g. Smith's motion to exclude any reference to the summary judgment opinion or dismissed claims is GRANTED.

3. Jordan's petitions for writs of habeas corpus ad testificandum for David Tatum (Jackson Correctional Institution) and Stephen Alexander (New Lisbon Correctional Institution), Dkt. 63 and Dkt. 64, are GRANTED. Jordan should be prepared during the final pretrial conference to identify which day those witnesses will be testifying.

4. The parties may have until April 8 at noon to resubmit their exhibits and exhibit lists in the form they intend to offer them at trial.

Entered April 4, 2025.

BY THE COURT:

/s/

_____

JAMES D. PETERSON
District Judge